IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

SERENA S.,

      **Plaintiff,**

v.                                      **Case No.: 5:23-cv-00483**

MARTIN J. O'MALLEY,
**Commissioner of the**
**Social Security Administration,**

      **Defendant.**

### PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner") denying Plaintiff's application for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383f. The matter is assigned to the Honorable Frank W. Volk, United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross motions for judgment on the pleadings, as articulated in their briefs. (ECF Nos. 13, 14).

For the following reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Plaintiff's motion for judgment on the pleadings to the extent that it requests remand of the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g); **DENY** Defendant's request to affirm the decision of the Commissioner; **REVERSE** the

final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this case, **with prejudice**, and remove it from the docket of the Court.

## I.     Procedural History

On July 29, 2020, Plaintiff Serena S. ("Claimant") protectively filed for SSI, alleging a disability onset date of July 1, 2020, due to "back problems, knees bad, hands go numb, mental issues, concentration problems, panic attacks, depression, stress, anxiety, hard to be around people, problems sleeping, and no energy." (Tr. at 238, 240, 261). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 17). Thus, Claimant requested an administrative hearing on her application, which was held on September 9, 2022, before the Honorable Sabrina Tilley, Administrative Law Judge (the "ALJ"). (Tr. at 694-711). By written decision dated November 9, 2022, the ALJ found that Claimant was not disabled as defined by the Social Security Act. (Tr. at 14-31). The ALJ's decision became the final decision of the Commissioner on May 19, 2023, when the Appeals Council denied Claimant's request for review. (Tr. 1-6).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 2). The Commissioner subsequently filed a Transcript of the Administrative Proceedings. (ECF Nos. 9, 10). Claimant filed a Brief seeking judgment on the pleadings, and the Commissioner filed a Brief in Support of Defendant's Decision to which Claimant filed a reply. (ECF Nos. 13, 14, 15).

## II.    Claimant's Background

Claimant was 51 years old on her protective filing date and 53 years old on the date of the ALJ's decision. (Tr. at 26). She has the equivalent of a high school education,

communicates in English, and previously worked as a home attendant and bartender. (Tr. at 260, 262, 701-02).

### III.   Summary of ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 775 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 416.920(a)(4). The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 416.920(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 416.920(c). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." *Id.* If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"). *Id.* § 416.920(d). If so, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must assess the claimant's residual functional capacity ("RFC"), which is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 416.920(e). After making this determination,

the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 416.920(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, in the fifth and final step of the process, that the claimant is able to perform other forms of substantial gainful activity, given the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 416.920(g); *see also McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 416.920a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 416.920a(b). If an impairment exists, the ALJ documents his findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 416.920a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ determines the severity of the limitation. *Id.* § 416.920a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4)

adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 416.920a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a listed mental disorder. *Id.* § 416.920a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 416.920a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 416.920a(e)(4).

Here, the ALJ confirmed at the first step of the sequential evaluation that Claimant had not engaged in substantial gainful activity since July 29, 2020, the application date. (Tr. at 19, Finding No. 1). At the second step of the evaluation, the ALJ found that Claimant had the following severe impairments: degenerative disc disease of the lumbar spine, spondylosis, scoliosis, trochanteric bursitis, chondromalacia of the patella, major depressive disorder, and anxiety disorder. (*Id.*, Finding No. 2). The ALJ also considered Claimant's hypertension, gastroesophageal reflux disease, headaches, minimal degenerative changes of the left hand, opioid use disorder, and cannabis use disorder, but the ALJ found that the impairments were non-severe. (Tr. at 19-20). Under

the third inquiry, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 20-21, Finding No. 3). Accordingly, the ALJ determined that Claimant possessed:

> [T]he residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) lift and carry 50 pounds occasionally and 25 pounds frequently, sit six hours, and stand and/or walk six hours in an eight-hour day. She can never climb ladders, ropes, or scaffolds. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can frequently handle, finger, and feel. The claimant can tolerate occasional exposure to extreme temperatures, vibration, and hazards. She retains the capacity to understand, remember, and carry out simple routine repetitive tasks (on account of problems with concentration). The claimant can respond appropriately to occasional interaction with coworkers, supervisors, and the general public. Work should not involve fast paced work production requirements and few if any work-related decisions. She can adjust to usual work situations and occasional changes in the routine work setting.

(Tr. at 22-26, Finding No. 4).

At the fourth step, the ALJ determined that Claimant could not perform her past relevant work. (Tr. at 26, Finding No. 5). Therefore, under the fifth and final inquiry, the ALJ assessed Claimant's age and education in combination with her RFC to determine her ability to engage in substantial gainful activity. (Tr. at 26-27, Finding Nos. 6-9). The ALJ noted that (1) Claimant was born in 1968 and was defined as an individual closely approaching advanced age on the date of the application; (2) she had at least a high school education; and (3) transferability of job skills was not an issue because the Medical-Vocational Rules supported a finding that Claimant was "not disabled" regardless of her transferable job skills. (Tr. at 26, Finding Nos. 6-8). Considering these factors, Claimant's RFC, and the testimony of a vocational expert ("VE"), the ALJ determined that Claimant could perform jobs that existed in significant numbers in the

national economy, including medium exertional work as a coffee maker, hospital cleaner, or launderer by hand or light exertional work as a photocopy machine operator, housekeeper/cleaner, or marker. (Tr. at 26-27, Finding No. 9). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act. (Tr. at 27, Finding No. 10).

## IV.    <u>Claimant's Challenge to the Commissioner's Decision</u>

Claimant asserts that the RFC assessment is contrary to law and not supported by substantial evidence because it does not reflect the ALJ's findings regarding Claimant's moderate concentration, persistence, and pace deficits. (ECF Nos. 13, 15). In response, the Commissioner argues that the ALJ properly accounted for Claimant's mental impairments in the RFC finding. (ECF No. 14).

## V.    <u>Relevant Evidence</u>

The undersigned has reviewed all of the evidence before the Court. The following evidence is most relevant to the issues in dispute.

### A.  *Treatment Records*

Psychiatrist Ahmed D. Faheem, M.D., treated Claimant for depression and anxiety during the relevant period. Claimant expressed on August 14, 2020 that her medications were working "all right" and she was doing "okay." (Tr. at 495). Her attention/concentration was sufficient on examination. (*Id.*). There were no significant changes on November 6 and February 2, 2021. (Tr. at 518, 521). However, on October 26, 2021, Claimant's attention/concentration was poor. (Tr. at 631). Claimant was having difficulty because her electricity was shut off for nonpayment. (Tr. at 630). Dr. Faheem advised Claimant to seek assistance. (*Id.*). At her next visit with Dr. Faheem on November 2, 2021, Claimant reported that she continued to experience episodes of

depression, high anxiety, and mood fluctuations. (Tr. at 634). Her concentration was sufficient. (*Id*.). Dr. Faheem increased Claimant's dosage of Effexor and renewed her other prescriptions. (Tr. at 635). On January 14, 2022, Claimant was doing "okay," her medications were working "all right," and she had sufficient concentration. (Tr. at 638). Her clinical records were relatively the same through April 8, 2022, although Claimant reported that she continued to have trouble paying her bills and had no electricity or hot water. (Tr. at 642).

### B. Evaluations and Opinions

On January 15, 2021, consultative psychologist Katherine Marshall, M.S., performed a mental status examination of Claimant. Claimant reported that she could not concentrate, among other problems. (Tr. at 380). Her concentration during the examination was moderately impaired, but her pace and persistence were within normal limits. (Tr. at 382). Ms. Marshall diagnosed Claimant with major depressive disorder and generalized anxiety disorder. (Tr. at 383).

On February 1, 2021, state agency psychiatrist James Binder, M.D., assessed based upon his review of Claimant's records that Claimant had mild restrictions in all of the paragraph B criteria except that she was moderately limited in maintaining concentration, persistence, or pace. (Tr. at 93). He opined that Claimant was moderately limited in her ability to carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Tr. at 98-99). Overall, Dr. Binder assessed that Claimant was

"capable of learning and performing simple tasks in a setting without speed based production quotas." (Tr. at 100). Timothy Saar, M.D., affirmed Dr. Binder's findings on November 22, 2021 except that he concluded that Claimant could "learn and recall work-like procedures with reduced speed." (Tr. at 109, 111).

### C. Claimant's Statements

On September 9, 2022, Claimant testified during her administrative hearing that she could not work, in part, because she had panic attacks. (Tr. at 706). She recently surrendered her driver's license because of her "nerves." (*Id*.). Claimant expressed that it was hard for her to concentrate on her job. (*Id*.). She noted that she took medication for her fluctuating mood and "nerves." (Tr. at 710).

## VI.    Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). The United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

*Blalock*, 483 F.2d at 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to ensuring that the ALJ

followed applicable Regulations and Rulings in reaching his decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.   <u>Discussion</u>

Claimant argues that the ALJ's RFC assessment does not reflect the ALJ's step three finding that Claimant was moderately limited in the paragraph B category of maintaining concentration, persistence, or pace. (ECF No. 13). When the ALJ applies the special technique to rate a claimant's degree of functional limitations from mental impairments, the ALJ determines whether the claimant is able to use each of the four broad categories of mental functioning in a work setting. *Id*. at § 12.00F(1). The broad categories, also known as paragraph B criteria, include: (1) understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself. The ALJ uses a five-point scale, ranging from no, mild, moderate, marked, and extreme limitations. *Id*. at § 12.00F(2)(a)-(e). Each rating corresponds to the claimant's ability to function in the category "independently, appropriately, effectively, and on a sustained basis." *Id*. A finding of "no limitation" reflects that the claimant can function in the category; "mild limitation" means that the claimant's ability to do so is "slightly limited;" "moderate limitation," as the ALJ found here, indicates that the claimant has "fair" functional ability in the category; "marked limitation" means that the claimant's ability to function in the category is "seriously limited;" and an "extreme limitation" rates that the claimant cannot function in that category "independently, appropriately, effectively, and on a sustained basis." *Id*.

As relevant to this action, the mental functional category of concentrating, persisting, or maintaining pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E(3) (effective Apr. 2, 2021 to Oct. 5, 2023). Examples of activities that fall within this category include "[i]nitiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day." *Id.*

As noted, the limitations identified in the paragraph B criteria at steps two and three of the sequential evaluation are not a substitute for an RFC assessment but are used to rate the severity of the claimant's mental impairments. The mental RFC assessment, which is used at steps four and five of the sequential evaluation, requires a more detailed assessment of the areas of mental functioning. SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.*

According to SSR 96-8p, the ALJ's RFC determination requires "a function-by-

function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 416.945(b)-(d)

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at *3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at *4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at *7. Further, the ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite

contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

### A. Simple, Routine, and Repetitive Tasks

Claimant relies on *Mascio* and its progeny in support of her argument that the ALJ did not account for her moderate limitation in concentration, persistence, or pace by restricting her RFC to simple, routine, and repetitive tasks. In *Mascio*, the ALJ found at step three of the disability determination process that the claimant experienced moderate difficulties in maintaining concentration, persistence, or pace; however, the ALJ failed to include any mental RFC restrictions in the controlling hypothetical question presented to the vocational expert. *Mascio*, 780 F.3d at 637-38. While the vocational expert supplied a list of jobs that were unskilled, the Fourth Circuit found this to be insufficient to account for the claimant's moderate mental limitations and held that "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). The Court indicated that "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* Because the ALJ failed to either include any mental restriction in the RFC **or** explain why a "moderate limitation in concentration, persistence, or pace at step three d[id] not translate into a limitation" in the ALJ's RFC finding, the Fourth Circuit found that remand was appropriate. *Id.*

Subsequently, in *Sizemore*, a claimant relied on *Mascio* in arguing that an ALJ erred by failing to either account for his moderate difficulties with regard to

concentration, persistence, and pace in the RFC or adequately explain why the moderate deficits did not affect the claimant's ability to work. *Sizemore v. Berryhill*, 878 F.3d 72, 80 (4th Cir. 2017). The Fourth Circuit concluded that the ALJ's assessment was substantially supported by the findings of the examining and non-examining psychologists. *Id.* at 81. The opinions of those psychologists supported the ALJ's conclusion that, "despite Sizemore's overall moderate difficulties with concentration, persistence, or pace, he would nonetheless be able to *stay on task* while performing simple one, two-step tasks, as long as he was working in low stress non-production jobs with no public contact." *Id*. The Fourth Circuit thus rejected the claimant's *Mascio*-based challenge.

The Fourth Circuit later expounded in *Shinaberry* that its ruling in *Mascio* "did not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." *Shinaberry v. Saul*, 952 F.3d 113, 121 (4th Cir. 2020). Rather, an ALJ could conclude that the moderate limitation did not affect the claimant's ability to work. *Id.* In Shinaberry's case, the ALJ "discussed in detail the psychological evaluations performed by the SSA psychological consultants and [examining psychologist], as well as Shinaberry's adult function report, and sufficiently explained why the mental limitation to simple, routine, and repetitive tasks accounted for Shinaberry's borderline intellectual disability and her moderate limitations in her concentration, persistence or pace." *Id.* Accordingly, the Fourth Circuit held that the ALJ's findings and the mental limitation included in the RFC were sufficiently explained and supported by substantial evidence in the record. *Id.* at 122.

Here, the ALJ concluded at step three that Claimant was moderately limited in

concentrating, persisting, or maintaining pace because Claimant reported concentration difficulties and had moderate concentration limitations during her consultative examination. (Tr. at 21). However, her persistence and pace were normal during her consultative examination, and her attention/concentration were consistently sufficient when her treating psychiatrist examined her. (*Id*.).

In the RFC assessment, the ALJ discussed Claimant's treatment for depression and anxiety in February through November 2020, noting that Claimant's mental status examinations were normal, she reported that medication was helping, and she denied side effects from medication. (Tr. at 23). In contrast, Claimant claimed during her consultative examination in January 2021 that medication was ineffective, and she appeared anxious, depressed, tearful, and irritable with moderately impaired concentration on examination. (Tr. at 24). Thereafter, Claimant reported to her psychiatrist that she was doing "okay," and her medication helped, but she complained of stressors and episodes of depression and high anxiety. (*Id*.). The ALJ concluded that, due to the periods when Claimant described increased stressors or symptoms, the ALJ restricted Claimant's RFC to understanding, remembering, and carrying out simple, routine, repetitive tasks "on account of problems with concentration." (Tr. at 22, 24).

The ALJ was persuaded by the state agency prior administrative findings that Claimant had a moderate limitation in concentration, persistence, or pace. (Tr. at 25). The ALJ explained that she limited Claimant to simple tasks because it was consistent with Claimant's consultative examination findings. (*Id*.). That explanation is far more reminiscent of the *Shinaberry* analysis, which the Fourth Circuit found to be adequate, than the RFC assessment in *Mascio*. Like *Shinaberry*, the ALJ relied on the opinions of medical experts and other evidence in concluding that the mental RFC limitation to

simple, routine, and repetitive tasks accounted for Claimant's moderate limitation in concentration, persistence or pace. *Shinaberry,* 952 F.3d at 121. "An ALJ may account for a claimant's limitation with concentration, persistence, or pace by restricting the claimant to simple, routine, unskilled work where the record supports this conclusion, either through physician testimony, medical source statements, consultative examinations, or other evidence that is sufficiently evident to the reviewing court." *Tracy C. v. O'Malley*, No. 1:23CV198, 2024 WL 1286484, at *6 (M.D.N.C. Mar. 26, 2024). The undersigned **FINDS** that the prior administrative findings thus provide more than a scintilla of evidence to support the ALJ's decision to restrict Claimant's RFC to simple, routine, and repetitive tasks "on account of problems with concentration." (Tr. at 22). However, for the reasons discussed below, other inconsistencies in the RFC finding render the ALJ's decision incapable of meaningful review.

### B. *Fast Paced Work Production Requirements*

Claimant contends that the ALJ did not account for her moderate concentration limitation by restricting her RFC to no fast-paced work production requirements. At the initial level of agency review, Dr. Binder assessed that Claimant could learn and perform "simple tasks in a setting without speed-based production quotas." (Tr. at 100). Upon reconsideration, Dr. Saar found that Claimant could "learn and recall work-like procedures with reduced speed." (Tr. at 111). In assessing Claimant's RFC, the ALJ stated that she was persuaded by the administrative findings to the extent that the experts concluded that Claimant was limited to "no speed-based production quotas." (Tr. at 25). Notwithstanding this statement, the ALJ did not include that limitation in the RFC or explain her reasoning for excluding it. Of course, the ALJ did assess a limitation to "no ***fast paced*** work," (emphasis added), which the Commissioner appears to argue is

indistinguishable. However, the ALJ explicitly stated that limitation accounted for Claimant's moderate limitation in adapting or managing herself. (*Id.*). There is no articulation that the restriction to "no fast paced work" accounted for Claimant's moderate difficulty concentrating, and, if so, why it accommodated it.

The ALJ clearly explained that she was persuaded by findings that Claimant could not work in jobs that involved "speed-based production quotas." That is a different limitation than "no fast paced work production requirements," which is the only speed-based limitation that the ALJ assessed. For instance, certain jobs could potentially allow workers to perform at a normal or reduced speed, but nonetheless require them to fulfill production quotas based on speed. While it is possible that the ALJ defined the restriction "no fast paced work production requirements" as equivalent to jobs without "speed-based production quotas," that is not apparent from the decision, and that clarification was not shared with the VE. Therefore, it is unknown whether the jobs that the VE identified could be performed by someone unable to fulfill *any* speed-based production quotas.

Another flaw in the decision is that the ALJ did not reconcile Dr. Saar's conclusion that Claimant performed at a "reduced speed" due to her problems with sustained concentration and persistence. (Tr. at 111). The ALJ cited Dr. Saar's finding and found it persuasive, but she did not explain how it factored into her RFC assessment. (Tr. at 25). It is unclear from the decision whether the ALJ found that the "reduced speed" restriction was unwarranted, or whether she found no fast-paced work production requirements to be the same as "reduced." To the extent that the ALJ defined "no fast paced work production requirements" as jobs which allowed Claimant to work at a "reduced speed," that definition was also not provided to the VE. Consequently, it is

unknown whether the VE understood that restriction and supplied a list of jobs that allowed a worker to perform at a reduced speed. Alternatively, if the ALJ found that the restriction to "reduced speed" was not warranted, she did not express that finding or explain her reasoning. The ALJ was not obligated to adopt or incorporate Dr. Saar's RFC finding, but she was required to provide enough explanation to allow for meaningful review of her decision, including addressing critical conflicts in the evidence.

In the Fourth Circuit, an ALJ must explain RFC restrictions such as "non-production oriented work setting," "a production rate or demand pace," or "no fast paced production." *Perry v. Berryhill*, 765 F. App'x 869, 870 (4th Cir. 2019); *Thomas v. Berryhill*, 916 F.3d 307, 312 (4th Cir. 2019), *as amended* (Feb. 22, 2019); *Trena Sue Y. v. Kijakazi*, No. CV DLB-20-1075, 2021 WL 4034264, at *4 (D. Md. Sept. 3, 2021); *Sarah N.W. v. Saul*, No. 5:19-CV-00081, 2021 WL 668774, at *5 (W.D. Va. Feb. 19, 2021); *Lisa G. v. Saul,* No. 7:18-cv-0039, 2019 WL 4148173, at *4 (W.D. Va. Aug. 30, 2019); *Fernandez v. Berryhill*, No. CV 9:18-573-BHH-BM, 2019 WL 1472958, at *5 (D.S.C. Mar. 13, 2019), *report and recommendation adopted,* 2019 WL 1470198 (D.S.C. Apr. 3, 2019); Such terms are not defined by regulation or in the Dictionary of Occupational Titles (DOT), nor are they self-explanatory.

The ALJs in the cases that the Commissioner relied upon in her brief provided sufficient explanation for the Court to understand the meaning of the production rate RFC restrictions. For instance, in *Adkins*, the Court found that it was clear what the term "non-production rate pace" meant because the ALJ stated that the RFC finding was based on claimant's anxiety and his testimony that quotas were part of the reason his past work was so stressful. *Adkins v. Kijakazi*, No. CV 3:20-00281, 2021 WL 4282584, at *4 (S.D.W. Va. Sept. 21, 2021). The ALJ in *Adkins* included the exact language that

18

the state psychologist used in the prior administrative finding, thus indicating that the ALJ employed the expert's definition of "non-production rate pace." *Id.* at *5. Here, by contrast, the ALJ's assessed limitation of "no fast paced work production" did not match any of the prior administrative findings. There is no explanation in the ALJ's decision or the evidence to demonstrate what that limitation means, or how it differs, if any, from the agency experts' opinions.

In cases which were affirmed, the ALJs provided additional explanation for production rate limitations, such as restricting the claimants to no assembly line work or the ability to maintain concentration, persistence, or pace in two-hour increments. *Fletcher v. Kijakazi*, No. CV AAQ-21-00238, 2022 WL 1782599, at *3 (D. Md. June 1, 2022); *Crawford v. Saul*, No. 5:20-CV-00372, 2021 WL 2212729, at *12 (S.D.W. Va. Apr. 21, 2021), *report and recommendation adopted,* 2021 WL 2212239 (S.D.W. Va. June 1, 2021); *Sandra G. v. O'Malley*, No. 1:23CV6, 2024 WL 1119550, at *4-6 (M.D.N.C. Mar. 14, 2024). The ALJ did not provide similar restrictions or elaboration in this case.

In sum, the undersigned **FINDS** that the ALJ did not provide sufficient explanation for her analysis regarding Claimant's ability to maintain concentration, persistence, or pace; particularly as to production quotas. Therefore, the Court cannot meaningfully review the decision to determine whether it is supported by substantial evidence. The undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon the mental RFC assessment as it relates to Claimant's ability to maintain concentration, persistence, or pace.

## VIII.  <u>Recommendations for Disposition</u>

Based on the foregoing, the undersigned United States Magistrate Judge

respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's request for judgment on the pleadings, (ECF No. 13), to the extent that it requests remand of the Commissioner's decision; **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 14); **REVERSE** the final decision of the Commissioner; **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this PF&R; and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Frank W. Volk, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Judge and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Volk, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** April 30, 2024

_____
Cheryl A. Eifert
United States Magistrate Judge